Carutiiers, J.,
delivered the opinion of the Court.
A. Jordan, on the 23d of December, 1857, being largely indebted, and having on hands, as a merchant, a stock of goods of the value of upwards of five thousand dollars, made an assignment of the same, on that day, to Lewis Metcalf, as trustee, for the 'benefit of specified creditors. The defendant, as a constable, held sundry executions, issued by justices of the peace, against Jordan; some on judgments rendered before, and others after the date of the deed of trust, amounting, in the aggregate, perhaps, to the full value of the goods. Many of these, if not all, are embraced in the deed; but • there is a discrimination against some or all of those who had sued, in case of a deficiency. The trust was to be closed during the next year, and the goods to be sold for cash, by Jordan as agent of the trustee, or otherwise, for the purposes of the trust.
LTpon the validity of this deed a dispute arose between the officer and the trustee, and an agreed case was made up by them, under the statute on that subject, and submitted to the Circuit Court. The decision was in favor of the deed.
The argument here, in favor of reversal, is based upon this statement in the case agreed:
“ It is agreed that the object of making said deed of trust was to prevent such of his creditors, who were about to sue, or might sue said Jordan, from saori- *579 ficing bis goods by sale, when he desired that his goods should not be left to a race of diligence among or between his creditors; but he desired that he should have the opportunity, through his trustee, of selling the goods, as provided in said deed, and of distributing the funds rateably, as therein provided.”
There is nothing in the deed itself, no defect in its provisions upon its face, which áre assailed in the argument. As no question is made upon that, its provisions need not be noticed. There is no doubt about the debts set forth being real, or that there is an excess of property, or any other of the common badges of fraud, palpable in the deed.
But the objects and purposes of it, as admitted in the agreement, are the grounds of attack. It is insisted, that to make an assignment to prevent the “ sacrificing of his goods by sale,” to be made by his creditors, or to protect them from a “ race of diligence among his creditors,” is equivalent to the words of the statute of frauds,” “ made to hinder and delay creditors.” We are referred to Burrell on Assignments, 891, and some reported cases cited by him in a note, to sustain this position. The statutes of frauds of the different States, as well as their insolvent laws, are so dissimilar in their provisions that we are not able to determine what weight should be given to their decisions on those subjects in a controversy under our laws.
The words “hinder and delay” are to be taken in their legal or technical, and not their literal sense, or no deed could stand where all the creditors were not provided for. If this were otherwise, the right to prefer one creditor to another, where a debtor cannot *580 pay all, would be defeated. But “a debtor may prefer one creditor, and secure bis debt, though others may suffer loss.” 8 Yer., 134. He may, at any time before a lien has been obtained upon his property by judgment in Court or levy, appropriate it by bona fide sale or assignment to the payment or security of other creditors. This will not fail, because a reasonable “delay” is taken to sell and apply. He may thus interpose obstacles in the way of others; that is, “hinder” them, as well as “ delay them.” The statute only refers to an improper or illegal hinderanee and delay — not such as is reasonable and fair in the exercise of the well established right to prefer creditors.
If it appeared from his own acknowledgment, or otherwise, that his object was.to defeat certain creditors entirely, in the collection of their debts, though in suit, by the assignment of all his property for the payment of other creditors, what would that be more than what is implied in all assignments. That is the object always* where all cannot be paid. There is no other reason for allowing him to elect who he will pay — that is the essence and reason of the rule. If he had said, then, that his object was to defeat one set of creditors entirely, by applying all his property to others, it would not have made it fraudulent, much less to prevent the latter from “ sacrificing his property.” If his purpose was to prevent a “race of diligence among his creditors ” at law for his property, by appropriating it to preferred creditors, this .would not be fraudulent,, because it was just what he had a right to do. The rule contended for would compel him to surrender this long established right to choose among his creditors, *581 where some had sued and others not. It would not be controverted that a debtor might, at any time before a judgment and levy, except where the judgment would create a lien, confess a judgment to another and surrender his property in satisfaction, so as to defeat the first suit. An assignment to pay debts is of equal force, and, where there is no fraud, will defeat those who have been more vigilant in suing.
The suing creditors are striving, in a legal way, to make their debts to the exclusion of others, and have no right to complain if they are superseded by another legal mode of obtaining satisfaction — outrun, in the “race of diligence,” by a different road. It is only a fair contest between creditors, by different legal means, to secure themselves. Perhaps a pro rata distribution of the property would be the most equitable; but that is not our system, and other rules must prevail. Here the contest between the two sets of creditors is, which shall have all to the exclusion of the others; not for equitable distribution. They are equally meritorious, and the strongest legal right must prevail.
The judgment of the Circuit Court upon the agreed ease was right, and will be affirmed.