A. & J. TROUSTINE & CO., et als. v. B. LASK, et als.

1. FRAUDULENT DEED. *Void in part.* The law is now settled in this State, that an intentional fraud by the maker of a trust deed as to a portion of the debts provided for, but not participated in by the other beneficiaries whose debts are valid, is only void as to so much as is embraced by the fraudulent purpose of the maker, and concurred in by the beneficiaries whose debts are false and fictitious. Such a deed is good as to the claims of other beneficiaries.

2. LIEN ON NOTES ASSIGNED. Notes were assigned and transferred to two of the grantor's creditors, and written notice given to the makers of the notes, several months prior to the attachment of the notes by other creditors; *held*, that the lien of the assignees of the notes was superior by virtue of the prior assignment and written notice.

3. AIDING IN FRAUDULENT CONVEYANCE. A creditor of the grantor, with a knowledge that the latter was much embarrassed, and probably contemplating a fraudulent disposition of his property, but without intending to aid him in consummating his fraudulent purpose, bought a stock of goods in another State to secure his own claim, and at the same time get a good bargain in the purchase of the goods; and the money thus paid by the creditor was used by the grantor in paying

Troustine *v.* Lask.

some of his other creditors; *held,* that no fraud could be attributed to the said creditor, and he was not liable as a participant in the fraud of the grantor.

FROM DAVIDSON.

No record of this case can be found.

NICHOLSON, C. J., delivered the opinion of the Court.

Complainants are creditors of B. Lask, and filed their several bills, first, to set aside a deed of trust made on the 28th day of November, 1865, to James Chamberlain, as trustee, conveying to him a stock of goods, etc., to secure various debts therein specified; second, to have the benefit of an attachment suit commenced by B. Lask against J. S. Loventhal & Co. for $3,300, and third, to reach an indebtedness of M. Fishel & Brother, or M. Fishel individually, of about $4,000, balance of a stock of goods in Rome, Georgia, sold by B. Lask to M. Fishel; or, if there is no such indebtedness, to hold M. Fishel & Brother responsible for the value of the goods, on the ground that they aided B. Lask in fraudulently disposing of them to defraud his creditors.

The allegation of the several bills are substantially the same, and they were consolidated and heard together.

The Chancellor decreed for complainants on all the grounds on which relief was prayed, and defendants appealed.

We will state our conclusions as to the several questions raised and necessary to be determined, without stating our reasons in detail.

1. There is nothing on the face of the deed of trust on which it can be declared to be either intentionally or constructively fraudulent. In this we concur with the Chancellor.

2. The proof shows that the preferred debts secured to B. Lask, G. M. Hatch and McDougal, were false and fictitious, which fact, as well as other facts and circumstances, satisfy us that B. Lask was guilty of intentional fraud as to these pretended debts, and that N. Lask concurred in his fraudulent purpose.

The Chancellor came to the same conclusion, and for that reason declared the whole deed fraudulent and void, without regard to the question, whether the trustee, Chamberlain, and the beneficiaries in the trust deed participated in the fraud or not.

We understand the law to be now settled in our State, that an intentional fraud by the maker of a trust deed, as to a portion of the debts provided for, but not participated in by other beneficiaries, whose debts are valid, is only void as to so much as is embraced by the fraudulent purpose of the maker, and concurred in by the beneficiaries, whose debts are false and fictitious; *Thompson* v. *Wrather*, MSS.

We find no evidence in the record, that any of the beneficiaries except N. Lask, knew of or participated in the fraudulent purpose of B. Lask; nor is there any evidence implicating the trustee in this

fraudulent purpose. These beneficiaries, except Hatch and McDougal, lived in another State, had no connection with the fraud of B. Lask, never established the validity of their debts, and accepted the provisions of the trust deed before complainants fixed any valid lien on the trust property. We are, therefore, of opinion, that the trust deed is void as to the three false debts secured, but good as to the claims of the other beneficiaries. And that complainants can only reach any surplus of the trust property after the satisfaction of the valid claims secured by the deed. The claims of Hatch and McDougal are good only for the amounts actually due to them, which will be ascertained by reference.

3. The notes of Loventhal & Co, for about $3,300, made payable to B. Lask, were transferred and assigned to two of his creditors, Stadler & Co. and B. Simons & Co., either in payment or as collaterals. This assignment was several months before the issuance of the attachment by complainants, and Loventhal & Co. had been notified of the assignment. It is true, that, on the 18th of November, 1865, after the assignment of the notes, an attachment was taken out in the name of B. Lask, in the affidavit to procure which, it was stated that these notes were due to B. Lask, but their attachment was taken out by N. Lask, in the absence of B. Lask, and to secure B. Lask, who had endorsed the notes. B. Lask was, therefore, not affected by the statement in the affidavit as to the ownership of the notes.

Stadler & Co., to whom part of the notes were assigned are not parties, and, therefore, cannot be affected by any decree. B. Simons & Co. are parties, but no allegation is made in either of the bills as to the assignment of the Loventhal notes to them, nor do they, in their answer, make any reference to them.

Under these facts we hold that complainants acquired no lien upon the Loventhal notes, but that the lien of Stadler & Co. and B. Simons & Co. was prior and superior, by virtue of the prior assignment and notice to Loventhal & Co. But as B. Simons & Co. are beneficiaries under the trust deed, they will be required to account for so much of the Loventhal notes as they have received and made available as collaterals, unless they shall show those collaterals were applied to other debts. As to the Loventhal notes the decree of the Chancellor is reversed.

4. The proof shows that B. Lask owned a stock of goods at Rome, Georgia, worth, as invoiced, $13,441. He was indebted to M. Fishel & Brother, at Nashville, by account, in the sum of $2,490. M. Fishel went to Rome, Georgia, and bought the stock of goods, deducting 20 per cent. from the invoice price, and deducting also, the account of M. Fishel & Bro., being $8,273, which was paid in cash to B. Lask.

It thus appears, that, when the attachment bills were filed, neither M. Fishel & Brother nor M. Fishel individually, were indebted to B. Lask in any amount on this purchase, and, as garnishment bills, they must fail.

But it is alleged in nearly all the bills, that the purchase of the goods by M. Fishel, from B. Lask, at Rome, Georgia, was fraudulent as to B. Lask's creditors, and in some of the bills M. Fishel is charged with such complicity in the fraudulent purpose of B. Lask, as to render him responsible to B. Lask's creditors for the value of the goods. The Chancellor took this view of the facts, and, "with some misgiving," rendered a decree against M. Fishel & Brother for the value of the goods.

We think the proof shows that M. Fishel was aware of the embarrassed condition of B. Lask, and that he availed himself of B. Lask's embarrassment to effect the double object of securing the debt of $2,490 due to M. Fishel & Brother, and to obtain the goods at a price at which he could make a profit; but we are unable to see that M. Fishel had any purpose looking to defeat the creditors of B. Lask, further than this would result from his getting the goods at a price on which he could make a profit on them. As we think the proof tends to show, the money paid by M. Fishel for the goods was used by B. Lask in payment of some of his other creditors, and, in this view, no fraud could be attributed to M. Fishel in buying the goods and paying the money, whereby B. Lask was enabled to pay a portion of his debts.

Our conclusion is, that, M. Fishel, with a knowledge that B. Lask was much embarrassed, and probably was contemplating a fraudulent disposition of his property, but without intending to aid him in consummating his

fraudulent purpose, bought the Rome stock of goods to secure his own claim, and, at the same time, to get a good bargain in the purchase of the goods. The proof fails to satisfy us that M. Fishel had any purpose in making the purchase, to hinder or defeat B. Lask's creditors, nor do we think that $10,763 in cash for an old stock of goods invoicing $13,431, is such an undervaluation as, *per se*, amounts to fraud. If there was enough in the facts to render the sale of the goods by B. Lask to M. Fishel fraudulent as to B. Lask's creditors, they might have followed and subjected the goods to their claims. This, we understand from the record, has been attempted in the Courts of Georgia, by some of the complainants in this case. This being so, we know of no principle of law or justice, on which M. Fishel can also be made liable for the value of the goods in our Courts. As between B. Lask and M. Fishel, the sale was valid, although it may have been invalid as to B. Lask's creditors. Whether it was fraudulent or not as to B. Lask's creditors, was a question to be determined by the Courts of Georgia, according to the laws of that State. Under our Statutes, creditors without obtaining judgment, may attach fraudulent sales and other devices to hinder and defeat creditors, and follow the proceeds of such fraudulent sales into the hands of fraudulent vendors, but we do not think that either the facts of the pleadings raise this qustion in the present case.

On this branch of the case, therefore, we are of opinion that complainants have failed to entitle them-

selves to relief, and that the Chancellor's decree was erroneous. The result is, that, as to the deed of trust, it is declared void as to N. Lask's entire debt; and as to so much of the claims of Hatch and McDougal as are not shown to be valid, and as to so much of the claims of Hatch and McDougal as are shown to be valid, and as to all the beneficiaries, the deed is valid. As to so much of the bills as seek to reach the Loventhal & Co. claims, and to make M. Fishel or M. Fishel & Brother responsible, the same is dismissed. The costs of the cause in this Court will be paid by complainants, and the cause will be remanded to the Court below for further proceedings, where the costs of that Court will be adjudged.