# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**April 16, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

JERRY BOWMAN,                          )
                                       )
    Plaintiff/Appellant,           )
                                       )       Appeal No.
VS.                                    )       01-A-01-9808-CH-00424
                                       )
MIDSTATE FINANCE COMPANY,              )       Bedford Chancery
INC., a Tennessee Corporation,         )       No. 19,280
                                       )
    Defendant/Appellee,            )
                                       )
and                                    )
                                       )
E. SCOTT BOWMAN,                       )
                                       )
    Defendant.                     )


APPEALED FROM THE CHANCERY COURT OF BEDFORD COUNTY
AT SHELBYVILLE, TENNESSEE

THE HONORABLE CHARLES LEE, JUDGE


GRANVILLE S.R. BOULDIN, JR
122 North Church Street
Murfreesboro, Tennessee 37133-0811
    Attorney for Plaintiff/Appellant

CHARLES L. RICH
202 Union Planters Bank Building
Shelbyville, Tennessee 37162
    Attorney for Defendant/Appellee


AFFIRMED AND REMANDED


BEN H. CANTRELL,
PRESIDING JUDGE, M.S.


CONCUR:
KOCH, J.
CAIN, J.

# O P I N I O N

A holder of the first mortgage on a parcel of real estate took a quitclaim deed from the owner to satisfy the mortgage and in payment of some unsecured debts. The owner's brother, claiming as an equitable owner of the property and as a creditor, asserted that (1) the conveyance was fraudulent as to creditors, and (2) that the mortgagee was not a bona fide purchaser under the quitclaim deed. The Chancery Court of Bedford County dismissed the claim. We affirm.

## I.

The Bowman family operated a large farm in Bedford County. By 1988, all the children, two boys and a girl, had become adults. One child, Scott, ran his own dairy business. The parents owned a 132 acre tract that was mortgaged to the First National Bank of Shelbyville. Scott did business with Midstate Finance Company, Inc., where he frequently borrowed money to finance his operation. His parents were also obligated on some of the Midstate loans.

In 1993, Scott and his parents were heavily in debt. The parents conveyed the 132 acre tract to Scott on Scott's promise to sell the property and to pay the net proceeds to his brother and sister. At essentially the same time, Midstate sued Scott and his parents on the debts they owed Midstate. Midstate also purchased the first mortgage on the 132 acre tract from the First National Bank of Shelbyville.

On April 21, 1994, Scott agreed to quitclaim the property to Midstate in lieu of foreclosure. Midstate agreed to sell the property and to pay the proceeds to Scott, after deducting the costs of sale, the debts owed Midstate, and an unspecified

amount owed by Scott Bowman to Michael M. Shofner. Scott Bowman executed and delivered the quitclaim deed to Midstate, and Mr. Shofner, on behalf of Midstate, executed the following oath in order to record the deed:

> I, or we, hereby swear or affirm that the actual consideration for the transfer or value of the property transferred, whichever is greater, is $10.00, which amount is equal to or greater than the amount which the property transferred would command at a fair and voluntary sale.

## II.

### a. The Fraudulent Conveyance

The common law regarded a person's property, except that exempted by law, as a fund for the benefit of creditors. *State v. Nashville Trust Co.*, 190 S.W.2d 785 (Tenn. App. 1945); *see also* Tenn. Code Ann. § 30-2-305. It is, therefore, understandable why early English statutes provided that all transfers of property made with the intent to hinder, delay, or defraud creditors were fraudulent and void. The substance of these statutes (13 Elizabeth (ch. 5) and 27 Elizabeth (ch. 4)) now appears in our Code at Tenn. Code Ann. § 66-3-101. In addition, in 1919, our legislature passed the Uniform Fraudulent Conveyance Act, which made a conveyance fraudulent, without regard to intent, if the transfer was for an inadequate consideration and the transferor was insolvent, or was rendered insolvent by the transfer. Tenn. Code Ann. § 66-3-305. The Uniform Law did not repeal the prior act but merely enlarged thereon. *Scarborough v. Pickens*, 170 S.W.2d 585 (Tenn. App. 1942).

The combined effect of these statutes makes a conveyance fraudulent as to creditors if it is made without a fair consideration, leaving the grantor insolvent, or if it is made with the actual intent to hinder, delay, or defraud *creditors. Hicks v. Whiting*, 149 Tenn. 411 (1923); *Macon Bank and Trust Co. v. Holland*, 715 S.W.2d 347 (Tenn. App. 1986).

Under the Uniform Act fair consideration is defined as:

Fair consideration is given for property, or obligation:

(1) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or
(2) When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.

Tenn. Code Ann. § 66-3-304.

The appellant argues that the oath of value on the deed estops Midstate from showing that the actual consideration for the property was more than ten dollars. In order to record a deed conveying a freehold estate, the grantee must pay a recordation tax based on the consideration for the transfer or the value of the property, whichever is greater. Tenn. Code Ann. § 67-4-409(a)(1). The grantee is required to supply the information on which the tax is based. Tenn. Code Ann. § 67-4-409(a)(6)(A). In *Mid-South Bank & Trust Co. v. Quandt*, No. 01A01-9403-CH-00107 (filed in Nashville Oct. 20, 1995), this court held that the oath estopped the grantees from showing a greater consideration than the amount they swore to on the face of the deed.

The statute, however, treats quitclaim deeds differently. In Tenn. Code Ann. § 67-4-409(a)(4) the tax for recording a quitclaim deed is "based only on the actual consideration given for that conveyance. (Emphasis added). Where the conveyance is given to satisfy an antecedent debt, the grantee may in good conscience represent that a nominal consideration was given for that conveyance. The representation does not work an estoppel against the grantee.

We think the consideration paid in this case was not only "fair" but "full." Midstate agreed to take the property and sell it, and then to remit to Scott Bowman all the proceeds above the debts he owed to the bank and to Mr. Shofner. Since a

transfer for an antecedent debt qualifies as fair consideration, the transfer to Midstate cannot be set aside on this ground.

It could be argued that a transfer to one creditor, even for a fair consideration, would "hinder and delay" the other creditors. But our courts have refused to set aside such conveyances, even where the transferee knows the transferor has numerous other debts. *Troustine v. Lask*, 63 Tenn. 162 (1874); *Bates v. Fuller*, 76 Tenn. 644 (1881); *Blackmore v. Crutcher*, 46 S.W. 310 (Tenn. Ch. App. 1898). In *Feder v. Ervin*, 38 S.W. 446 (Tenn. Ch. App. 1896) the court said:

> It is true, the vendor, Ervin, was heavily in debt, and this fact was known to the purchasers; but that does not make the transaction fraudulent. There was no purpose upon the part of these purchasers to defraud the other creditors of Mr. Ervin. They only desired to save their own debt, and they paid a proper consideration.

38 S.W. at 449.

In *Hefner v. Metcalf*, 38 Tenn. 577 (1858) the court said:

> The words "hinder and delay" are to be taken in their legal or technical, and not their literal sense, or no deed could stand where all the creditors were not provided for. If this were otherwise, the right to prefer one creditor to another, where a debtor cannot pay all, would be defeated. But "a debtor may prefer one creditor, and secure his debt, though others may suffer loss." (citation omitted). He may, at any time before a lien has been obtained upon his property by judgment in court or levy, appropriate it by *bona fide* sale or assignment to the payment or security of other creditors. This will not fail, because a reasonable "delay" is taken to sell and apply. He may thus interpose obstacles in the way of others, that is, "hinder" them, as well as "delay them." The statute only refers to an improper or illegal hindrance or delay -- not such as is reasonable and fair in the exercise of the well established right to prefer creditors.

38 Tenn. at 579-80.

There is a limited right to avoid preferences under the bankruptcy law, but preferences are not fraudulent conveyances under state law, where the transaction is bona fide and the debt satisfied amounts to fair value for the property.

## b. The Quitclaim Deed and Bona Fide Purchasers

The appellant also argues that the defense of innocent purchaser is not open to one taking under a quitclaim deed. The basis for this contention is *Hows v. Butterworth*, 62 S.W. 1114 (Tenn. Ch. App. 1899) where the court said:

> "The defense of innocent purchaser insisted upon on behalf of defendant Butterworth in argument is not available, because it was not pleaded nor relied upon in his answer, and, if it had been, is not available, as he took under a quitclaim deed . . . ."

62 S.W. at 1115.

We think that case is doubtful authority for the proposition that a grantee in a quitclaim deed cannot be an innocent purchaser. There is authority to the contrary, more directly on point. In *Campbell v. Home Ice & Coal Company*, 126 Tenn. 524 (1912) the court said that a grantee of a quitclaim deed "will be regarded as a purchaser in good faith notwithstanding such quitclaim deed, if his title as shown by the registry record, is apparently valid and clear, and he has no notice of any defect in the title." 126 Tenn. at 534. From the time of that decision until now, the holding has not been challenged. We, therefore, overrule this argument by the appellant.

Although he does not raise it as a separate issue, the appellant argues that one acquiring land in payment of an antecedent debt cannot be a bona fide purchaser. He cites *Robinson v. Owens*, 103 Tenn. 91 (1899) for that proposition. We think, however, the case stands for the opposite. There Robinson conveyed property to Owens and the deed recited that part of the purchase price was unpaid. When Owens transferred the property to Vesey, Robinson argued that Vesey could not be a bona fide purchaser without notice. The court said, however,

> "[A] vendor who sells and conveys real estate without reserving a specific lien, may enforce his equity, as against his vendee and mere volunteers at any time before conveyance; but as against purchasers from and creditors of the vendee he comes too late, if he has delayed filing his bill and fixing a charge on the property

> until after they have rights and evidenced them through
> the public records of the state, as the law provides."

103 Tenn. at 98.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Bedford County for any further necessary proceedings. Tax the costs on appeal to the appellant.

 

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE