[No. 8514. Department One. January 22, 1910.]

MARGARET McDOUGALL, *Appellant*, v. CHARLES A. MURRAY *et al.*, *Respondents.*[1]

VENDOR AND PURCHASER—BONA FIDE PURCHASERS—QUITCLAIM—RECORDING. The grantee in a quitclaim deed, for value and without notice of a prior unrecorded quitclaim deed, is a bona fide purchaser, within Rem. & Bal. Code, § 8781, providing that all deeds shall be recorded and shall then be valid against subsequent bona fide purchasers.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered January 5, 1908, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to quiet title. Affirmed.

*J. W. A. Nichols*, for appellant.

MORRIS, J.—The only question involved in this appeal is, Is the grantee in a quitclaim deed an innocent purchaser within the meaning of the recording acts?

[1]Reported in 106 Pac. 490.

Both appellant and respondents derive title to the lands in controversy through John McCready, who on November 29, 1892, by quitclaim deed, conveyed the lands to Alex. McCready, which deed was recorded July 8, 1902. On July 19, 1902, Alex. McCready joined with Benjamin McCready in a conveyance by quitclaim deed of various lands, including the land in controversy, to their sister, the appellant, which deed is the foundation of her present claim of title. On August 9, 1894, John McCready conveyed these lands by quitclaim deed to Angus McIntosh, the deed being recorded August 22, 1894. On June 20, 1895, McIntosh conveyed by quitclaim to Charles A. Murray, which deed was recorded June 21, 1895; and on December 24, 1895, Murray, by warranty deed, conveyed to his wife, Jennie R. Murray, which deed was recorded April 4, 1901. On April 27, 1908, Jennie R. Murray, joining with her husband, conveyed to A. J. Weisbach by warranty deed recorded January 7, 1909. Appellant brought the action to establish and quiet her title to the land, and from an adverse judgment she appeals. Respondents do not appear here, and we have no brief in their behalf.

There was formerly much controversy over the question suggested by the appeal, many cases holding that, inasmuch as a quitclaim deed purports to convey only the interest of the grantor, it cannot have any operation when he has already parted with his interest, and that it is not material that his grantee had no actual notice of that fact; that the restricted language of the conveyance is equivalent to notice, and, as a final result, that he who accepts such a conveyance cannot, within the meaning of the recording acts, be a *bona fide* purchaser and as such entitled to protection against prior conveyances made by his grantor. Such, we think, is no longer the rule. The undoubted weight of authority in the more recent cases, following and enforced by the supreme court of the United States in *Moelle v. Sherwood*, 148 U. S. 21, and *United States v. California & Oregon Land Co.*, 148

U. S. 31, has established the rule that the grantee in a quit-claim deed occupies the same position under the recording acts as the grantee in any other form of conveyance. In the *Moelle* case, Mr. Justice Field says:

"The doctrine expressed in many cases that the grantee in a quitclaim deed cannot be treated as a *bona fide* purchaser does not seem to rest upon any sound principle. It is asserted upon the assumption that the form of the instrument, that the grantor merely releases to the grantee his claim, whatever it may be, without any warranty of its value, or only passes whatever interest he may have at the time, indicates that there may be other and outstanding claims or interests which may possibly affect the title of the property, and therefore, it is said that the grantee, in accepting a conveyance of that kind, cannot be a *bona fide* purchaser and entitled to protection as such; and that he is in fact thus notified by his grantor that there may be some defect in his title and he must take it at his risk. This assumption we do not think justified by the language of such deeds or the general opinion of conveyancers. There may be many reasons why the holder of property may refuse to accompany his conveyance of it with an express warranty of the soundness of its title or its freedom from the claims of others, or to execute a conveyance in such form as to imply a warranty of any kind even when the title is known to be perfect. He may hold the property only as trustee or in a corporate or official character, and be unwilling for that reason to assume any personal responsibility as to its title or freedom from liens, or he may be unwilling to do so from notions peculiar to himself; and the purchaser may be unable to secure a conveyance of the property desired in any other form than one of quitclaim or of a simple transfer of the grantor's interest. It would be unreasonable to hold that, for his inability to secure any other form of conveyance, he should be denied the position and character of a *bona fide* purchaser, however free in fact his conduct in the purchase may have been from any imputation of the want of good faith."

Brevity forbids a more extended quotation. The entire case is highly instructive and interesting to one seeking aid on the question before us. Mr. Justice Brewer announces the same rule in the two following cases, and it is again an-

nounced by Mr. Justice Gray in *Stanley v. Schwalby*, 162 U. S. 255.

The deed from John McCready to McIntosh, who paid a valuable consideration, was recorded August 22, 1894; while the deed from John McCready to Alex. McCready, under which appellant claims, was not recorded until July 8, 1902. The statute, Rem. & Bal. Code, § 8781, requires that all deeds shall be recorded in the office of the county auditor of the county in which the land is situate, and shall be valid against *bona fide* purchasers from the date of their filing in said office for record, and when so filed shall be notice to all the world. It appears from the record that neither the respondents nor McIntosh had knowledge that John McCready had executed the deed to Alexander McCready on November 29, 1892, until such knowledge came from its filing for record July 8, 1902, although they made inquiries as to the ownership of the property and a search of the records prior to the purchase by McIntosh. Under such circumstances McIntosh was an innocent purchaser in good faith, and he and his grantees are entitled to all the protection awarded by the recording act to such purchasers.

The territorial court, in *Ankeny v. Clark*, 1 Wash. 549, 20 Pac. 583, laid down the rule that:

"Under the statutes of our territory, a quitclaim deed is just as effectual to convey the title to real estate as any other form of deed, and a grantee in a quitclaim deed is entitled to the same presumptions as to *bona fides*, and has the same rights, as a grantee in a deed of general warranty."

This case was followed by this court in *West Seattle Land & Imp. Co. v. Novelty Mill Co.*, 31 Wash. 435, 72 Pac. 69.

We are, therefore, of the opinion that the court below followed the better and greater weight of authority in announcing its ruling, a ruling not only supported by the weight of authority, but based upon the soundest reasoning. Reference may be had to the case of *Babcock v. Wells*, 25 R. I. 23, 54 Atl. 596, 105 Am. St. 848, where in a monographic

note many cases upon the point before us are collated and discussed; also to the Central Law Journal, vol. 70, p. 10, under date of January 7, 1910, where the same subject is treated in a note following the case of *Downs v. Rich* (*Rich v. Downs*, 81 Kan. 43, 105 Pac. 9).

The judgment is affirmed.

Rudkin, C. J., Chadwick, Fullerton, and Gose, JJ., concur.