[No. 8252. Department One. February 4, 1910.]

EDWARD W. EYANSON et al., Appellants, v. ELIZABETH WAIDLICH et al., Respondents.[1]

COMPROMISE AND SETTLEMENT—EVIDENCE—SUFFICIENCY. A release or waiver of claims sufficiently shows a settlement between the parties respecting lands jointly bought, one party having made advances for and taken a mortgage upon the interest of the other, where the release describes the land and recites that, in consideration of $250 and of the surrender and cancellation of the note and mortgage, the mortgagor declares that he has no interest in the land, which had previously been quitclaimed to the mortgagee.

VENDOR AND PURCHASER—BONA FIDE PURCHASER—QUITCLAIM DEED. The grantee in a quitclaim deed, for value and without notice, is a bona fide purchaser, within the recording acts.

Appeal from a judgment of the superior court for King county, Main, J., entered April 20, 1909, in favor of the defendants, after a trial on the merits before the court without a jury, dismissing an action to quiet title. Affirmed.

Vince H. Faben and S. H. Kelleran, for appellants.

Edward Von Tobel and Jesse A. Frye, for respondents.

[1]Reported in 106 Pac. 746

CHADWICK, J.—This action was begun by Thomas E. Eyanson, who thereafter died, and is now prosecuted by plaintiffs, who are his heirs and legal representatives. In the year 1892, Thomas E. Eyanson, Dr. A. P. Mitten, and C. D. Waidlich, the ancestor of defendants, purchased a tract of land in King county, Washington. At the time, Eyanson and Mitten were residents of Seattle, and Waidlich was then, and up to the time of his death in 1902, a resident of the state of Indiana. The purchase price of the tract was $30,000. Eyanson and Mitten each paid $5,000, Waidlich paid $10,000, being his share in full, and also advanced $10,000 to pay for the interest of Eyanson and Mitten, for which they made a joint note and mortgage on their two-thirds' interest in the land, but with the understanding reserved that each was bound severally and not jointly to pay the sum of $5,000. This agreement seems to have been observed by all parties in all their subsequent transactions.

In 1893 Eyanson, being somewhat embarrassed financially, made a deed of his interest in the land to Jacob Neizer, a brother-in-law. The consideration expressed in this deed was the sum of $10,000. Neizer was a resident of the state of Indiana. It is not denied that this deed was made without consideration and solely for the purpose of putting the property beyond the reach of Eyanson's creditors. On the next day after the deed was executed, Neizer made a quitclaim deed to Amanda E. Eyanson. This deed was put on record December 17, 1906, by one of the heirs of Amanda E. Eyanson. It will be observed that this deed was recorded thirteen years after its execution and nine years after the death of Mrs. Eyanson. Both Mitten and Eyanson were unable to meet the terms of their obligation. Dr. Mitten caused his interest in the land to be conveyed to Waidlich in satisfaction of his debt, in the year 1895. Eyanson seems to have acted somewhat in the capacity of an agent for Waidlich with reference to the land, and between

the year 1893 and the time of his death carried on considerable correspondence with his principal, not only with reference to the settlement of his own indebtedness, but also with reference to the sale and probable value of the land. Eyanson never paid anything upon account of his indebtedness except a part of the sum of $693, paid as interest. This sum was the aggregate of smaller payments made between November 15, 1893, and November 30, 1897. Waidlich seems to have been disposed to give Eyanson, who had been his former partner and lifelong friend, every chance to make something out of the land. He was on the ground, knew its value, and was able to find a market for it if there had been any. That Eyanson and Waidlich had frequent negotiations tending toward a settlement of their differences there can be no doubt. Their final determination must be gathered from such documentary evidence as is found in the record. This makes it plain that, so far as Eyanson and Waidlich were concerned, their affairs were finally settled early in the year 1901. On October 4, 1900, Waidlich wrote Eyanson:

"I received your letter a few days ago and in answer will say that the contents of your letter was very much encouraging to me, because our outlook for us both seems to be brightening up on our land speculation, and we may come out all right yet, and so use your own pleasure in sending the papers as you had arranged when you were here."

And on May 10, 1901, Waidlich wrote as follows:

"Now I have no doubt but that you looked for a letter long ago but I could not decide just how I should answer on account of the interest you spoke of. I brought the matter before Marshal & McNagney and they could not see how and what an interest I could make and the only way for you to do to hold your interest as it stood and as I was willing to be contented as long as there was any prospect for to realize and make profits on the land for us both, and now as you have made me a deed for your interest I will and must say that if the land can be sold over and above my

claim whatever profit there would be I surely will remember you, for I could not be satisfied without doing with you what I consider right with you. And if you will advise me at any time that the sale could be made with profit let me know and I will depend on your judgment the proper time to sell, and I will still depend on you to look after my interest. If you will look after my taxes and let me know or any other matter that will come up to be looked after as I have no one else there that I could depend on only you. . . . Now if you will find out the amount of my taxes please let me know and all expenses I should pay you in the transaction of our business, send bill and I will send you draft for amount."

These letters must be construed and their meaning determined by reference to a deed made by Neizer to Waidlich by which he conveyed the Eyanson interest on August 4, 1900, and a deed correcting this transfer made April 15, 1901. Both of these deeds were recorded in King county, Washington, at the request of Thomas E. Eyanson. Thereafter Waidlich paid all taxes and assessments against the property. On July 8, 1904, Eyanson, in consideration of $250, signed two written releases or waivers of all claims in or to the estate of Waidlich. In one of these the land here involved was particularly described. It is recited:

"I further declare that I have had no interest whatsoever in that certain real estate situated in King county, Washington, described as the northeast one-quarter of the southeast one-quarter of Section Fourteen, Township Twenty-five north, of range three east, except a five acre tract described as follows: Commencing at the southeast corner of the northeast one-quarter of the southwest one-quarter, section fourteen, township twenty-five north, of range three east, running thence south twenty rods, thence west forty rods, thence south twenty rods, thence east forty rods to the place of beginning, since August 4th, 1900, the date when said property was conveyed to said Christian D. Waidlich, deceased; said conveyance having been made in consideration of the surrender and cancellation of the note and mortgage held by the said Christian D. Waid-

lich, executed by myself and others, and other good and valuable considerations."

This record shows a settlement between Eyanson and Waidlich, and is sufficient to conclude the rights of Thomas E. Eyanson and all those claiming under him.

But appellants assert that the money, the $5,000 originally put into the land by Eyanson, was the separate property of Amanda E. Eyanson, and that, the legal title being in her, the quitclaim deed from Neizer to Waidlich could not bar the right of her heirs to assert their interest; in other words, that the grantee under a quitclaim deed is not a *bona fide* purchaser within the recording acts. This question has been recently decided by this court contrary to appellants' contention. *McDougall v. Murray, ante* p. 76, 106 Pac. 490. So that, whether Waidlich took title from Neizer or took the title belonging to Amanda E. Eyanson, admitting that she had any title, he was, under the rule just announced, a purchaser in good faith under the recording acts.

It is unnecessary to further review the very able brief of appellants. Judgment affirmed.

RUDKIN, C. J., GOSE, FULLERTON, and MORRIS, JJ., concur.