JOHN C. CAMPBELL v. HOME ICE & COAL COMPANY.*

(*Knoxville.* September Term, 1912.)

1. **DEEDS OF CONVEYANCE.** Quitclaim deed conveys whatever interest the grantor has, unless specially limited.

Under our statute (Shannon's Code, section 3680), a quitclaim deed is a form of conveyance; and like other deeds, it conveys, under our statute (Shannon's Code, section 3672), whatever interest the grantor has in the land, unless otherwise specially limited and confined by its terms. (*Post, pp.* 530, 531.)

Code cited and construed: Secs. 3672, 3680 (S.); secs. 2812, 2820 (M. & V.); secs. 2006, 2013 (T. & S. and 1858).

2. **REGISTRATION.** Not necessary as between the parties, but is as against strangers and others without notice, when.

While under our statutes (Shannon's Code, sections 3671 and 3749) providing for the registration of deeds, deeds required to be registered are effective between the parties and their privies, without registration, yet as to strangers and other persons not having actual notice of them, they are effective only from the noting thereof for registration. (*Post, p.* 530.)

Code cited and construed: Secs. 3671, 3749, 3750 (S.); secs. 2811, 2887, 2888 (M. & V.); secs. 2005, 2072, 2073 (T. & S. and 1858).

---

*As to effect of quitclaim deed in otherwise perfect record title, see note in 29 L. R. A., 33.

On the question of the effect of a quitclaim deed upon after-acquired title, see note in 35 L. R. A. (N. S.), 1182.

As to effect of remote quitclaim in chain of title upon rights of subsequent purchaser, see note in 25 L. R. A. (N. S.), 1035.

As to precedence as between quitclaim deed and senior unrecorded deed, see notes in 12 L. R. A. (N. S.), 240; 26 L. R. A. (N. S.), 159.

For burden of proof as to *bona fides* of purchaser claiming against prior unrecorded conveyance or encumbrance, see note in 36 L R. A. (N. S.), 1124.

3. SAME. Deed first registered shall have preference over prior deed subsequently registered, unless there was notice of such unregistered deed.

In case of rival instruments, the deed first registered, or noted for registration, shall have preference over one of earlier date, but noted for registration afterwards, unless it is proved in a court of equity that the party claiming under the subsequently registered instrument had full notice of the previous unregistered instrument. (*Post, p.* 530.)

4. SAME. Unregistered deeds are void as against creditors, or bona fide purchasers without notice.

Any deed not properly registered, or noted for registration, is null and void, as to existing and subsequent creditors, or *bona fide* purchasers from the maker, without notice. (*Post, p.* 530.)

Code cited and construed: Sec. 3752 (S.); sec. 2890 (M. & V.); sec. 2075 (T. & S. and 1858).

Case cited and approved: Wilkins v. McCorkle, 112 Tenn., 688, 697.

5. SAME. Prior registered deed of a bona fide purchaser is not limited to call for corner of another's land under unregistered deed, but extends to his corner under his registered deeds.

Where the grantor in a prior but unregistered deed conveying the land in controversy to the defendant, having forgotten the making thereof, executed, for a valuable consideration, a second deed conveying the land to complainant's grantor, describing the land as beginning at a certain corner of the land of the defendant, which deed complainant's grantor accepted and paid the consideration, without notice of the said prior unregistered deed, and after making an examination of the records, and finding that said grantor was the record owner of the land, the deed of the complainant's grantor, having been first registered, must be considered as conveying the land bounded on the said corner of the land owned by the defendant under registered deeds, and is not limited to defendant's such corner as evidenced by said unregistered deed; and, therefore,

the said second deed so first registered was prior in right to the said first but unregistered deed, and complainant was vested with the title by the registered deed of his said grantor. (*Post, pp.* 527, 528, 531, 532.)

6. SAME. Grantee in quitclaim deed is not, for that reason, charged with knowledge of prior unregistered deeds.

The grantee's acceptance of a quitclaim deed is not evidence, within the purview and operation of our registration laws, that he had knowledge of any defect or infirmity in the title; and such deed does not, under said laws, create any presumption against him, and does not cast upon him the burden of explaining; but this doctrine has no bearing upon the equities which do not fall within the scope of the registration laws, and are unaffected thereby. (*Post, p.* 533.)

Cases cited and approved: Lowry v. Brown, 1 Cold., 456; Miller v. King.

7. DEEDS OF CONVEYANCE. Occupancy not sufficiently open and adverse to render deed of another to a third person void as champertous.

Where the defendant, holding title to the land in controversy under a prior unregistered deed, attempted to defeat complainant's title under a subsequent and registered deed, upon the ground that defendant's open and adverse possession at the time of the execution of such subsequent deed rendered it champertous and void, and it appearing that defendant's occupation consisted merely of a bridge extending a few feet over the land, and also the piling of some refuse lumber thereon, without showing how long the lumber remained thereon, or whether it was there when such subsequent deed was executed, it was held that such occupancy was not sufficiently open and adverse to render the deed, under which complainant claimed, void for champerty. (*Post, pp.* 529, 533, 534.)

8. SAME. Bona fide purchaser under a registered deed, with a quitclaim deed in his line of title, if the title is apparently valid and clear.

A purchaser of land holding under a registered deed, with a quitclaim deed in his line of title, or even immediately pre-

ceeding his deed, will be regarded as a purchaser in good faith, notwithstanding such quitclaim deed, if his title, as shown by the registration record, is apparently valid and clear, and he has no notice of any defect in the title. (*Post, p.* 534.)

Case cited and approved: Rich v. Downs, 81 Kan., 43.

### FROM WASHINGTON.

Appeal from the Chancery Court of Washington County.—S. C. WILLIAMS, Special Chancellor.

JULIAN H. CAMPBELL, for complainant.

HARR & BURROW, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

This is an ejectment bill, brought to recover a lot in Johnson City fronting thirty feet on the line of the Southern Railway Company. The facts on which the controversy arises are as follows:

On January 9, 1907, C. N. Brown conveyed to the defendant a lot fronting 300 feet on the line of the railway above mentioned. This deed was duly recorded on February 19, 1907. On May 21, 1907, Brown conveyed another 100 feet to the defendant lying immediately west of the 300 feet, and also fronting on the line of the railway company. This deed was not recorded. On February 25, 1909, Brown executed a quitclaim deed to J. F. Crumley, in which he quitclaimed to the latter "a certain parcel of land situated and lying in the town

of Johnson City, Washington county, Tennessee, on what is known as Brush creek, adjoining the property and plant of the Home Ice & Coal Company and others, and bounded as follows: Beginning at the northwest corner of Home Ice & Coal Company's land at the right of way of the Southern Railway; thence southeast-wardly with the line of said Home Ice & Coal Company with Brush creek to Water street of said town; thence southwardly with said Water street to what is known as the Waggoner heirs' line, now James F. Crumley; thence northwardly with the last-named line to the right of way of the said Southern Railway; thence with said right of way in a northeastwardly direction to the beginning." This instrument was duly acknowledged on the same day, and was registered on the 6th day of May, 1911. On the 17th day of March, 1909, J. F. Crumley conveyed to complainant, Campbell, the "following described real estate situated in the town of Johnson City, Tennessee: Beginning thirty-five feet from the center of the Southern Railway track on the northeast corner of J. E. Brading's lot on the waters of Brush creek, and running in a northeasterly direction with said right of way thirty feet; thence in a southwesterly direction, crossing Brush creek, 110 feet; then along Water street in a southwesterly direction thirty feet to J. E. Brading's line; then in a westerly direction along said Brading's line 110 feet, crossing Brush creek, to the beginning—said land being a part of the Waggoner heirs and the C. N. Brown tract lies southwest of the Home Ice

Company's plant, now located on the waters of Brush creek in Johnson City, Washington county, Tennessee." This deed was in fee simple, and contained covenants of seizin and against incumbrances and a covenant of general warranty of title. It was duly acknowledged on the 17th of March, 1909, and duly recorded on the 18th of March, 1909.

It appears from the evidence that this deed covers the southwestern thirty-foot front of the land described in the second deed, the unrecorded deed which was made by Brown to the defendant Home Ice & Coal Company.

Shortly before the present suit was brought the defendant erected a barn upon a portion of this thirty feet, and thereupon the present action was brought by Campbell, claiming title under his deed from Crumley, and alleging that he had no knowledge of the prior unrecorded deed to the defendant, and that he was a *bona fide* purchaser. The defendant answered, admitting that its deed of May 21 had never been recorded, but averring that the complainant's deed was champertous, because at the time of its execution the defendant was in open and adverse possession of the lot in controversy. The other defense was that the complainant was claiming through a quitclaim deed from Brown to Crumley, and inasmuch as Brown had conveyed the lot in controversy to the defendant, by the unrecorded deed referred to, there was nothing left in him which the quitclaim deed could convey.

The case was heard before Hon. S. C. Williams, special chancellor, who decreed in favor of complainant,

126 Tenn. 34

and thereupon the cause was brought to this court by appeal.

Under our statutes, a quitclaim deed is a form of conveyance. Shan. Code, sec. 3680, under article entitled "Forms of Conveyancing." Like other deeds, it conveys whatever interest the grantor has, unless otherwise specially limited and confined by its terms. Shan. Code, sec. 3672.

But no deed is good as to strangers, unless acknowledged and recorded as required by law. Id., sec. 3671. While instruments that are required to be recorded have effect between the parties thereto and their heirs and representatives, without being recorded, yet as to other persons not having actual notice of them, they have effect only from the noting thereof for record. Id., sec. 3749. When such instruments are recorded, it is provided they shall be notice to all the world from the time they are noted for record, and that they shall take effect from that time. Id., sec. 3950. In case there are rival instruments, the instrument first recorded, or noted for record, takes precedence over one of earlier date, but noted for record afterwards, unless it be proven in a court of equity, according to the rules of that court, that the party claiming under the subsequent instrument had full notice of the previous instrument. Id., sec. 3751. Any deed not proved or acknowledged, and recorded or noted for record, is null and void as to existing and subsequent creditors, or *bona fide* purchasers from the maker without notice. Id., sec. 3752; *Wilkins v. McCorkle,* 112 Tenn., 688, 697, 80 S. W., 834.

Our recording laws make no distinction between different kinds of deeds. As we have already said, a quitclaim deed carries title just as any other, unless its language renders that construction impossible. Under our recording laws a prior unrecorded deed does not carry title as against strangers without notice of its existence, and a subsequent deed, by force of these laws, actually passes the title. These views are supported by the weight of authority in other jurisdictions in which similar statutes have been construed. See the authorities collected under note 74, page 1695, of 39 Cyc.; note to *Hickman* v. *Green,* 123 Mo., 165, 22 S. W., 455, 27 S. W., 440, 29 L. R. A., 42-47; *Strong* v. *Whybark,* 204 Mo., 341, 102 S. W., 968, 12 L. R. A. (N. S.), 241 and note, 120 Am. St. Rep., 710; *Eger* v. *Brown,* 77 Kan. 510, 94 Pac. 803, 15 L. R. A. (N. S.), 459; *McDougall* v. *Murray,* 57 Wash., 76, 106 Pac., 490, 26 L. R. A. (N. S.), 159 and notes.

It is shown in the evidence that James F. Crumley paid Brown $100 for the property, and that before purchasing from Brown he examined the records in the register's office and found no record of any conveyance of this property by Brown. It is shown that Crumley had no knowledge of the second conveyance to the defendant Ice Company; also that Brown himself, a man seventy-five years old, had forgotten having made that deed. It appears that the sale and purchase in question arose out of a claim which Crumley, who was the adjoining owner, made against Brown as to the ownership of the property. Crumley thought it was included in

land he had purchased from the Waggoners. Brown thought he owned it, but was not sure. To settle this controversy Brown agreed to quitclaim the property to Crumley for the price of $100. These facts explain the making of the quitclaim deed, excluding every suggestion that Crumley had any knowledge of the unrecorded deed of the Ice Company. Brown and Crumley differ as to the number of feet which they supposed was covered by the deed. Brown says fifteen feet; Crumley says twenty-five feet—that he stepped it off. The deed, however, by its calls covers 100 feet; that is to say, if the beginning corner is fixed at the northwest corner of the 300-foot lot conveyed by Brown to the Ice Company, and we think it must begin there. The defendant insists that the beginning corner is the northwest corner of the second lot conveyed by the Ice Company, that which it claimed under the unrecorded deed. This contention is based on the theory that the quitclaim deed, calling to begin on the northwest corner of the land of the Ice Company, must begin at the nearest lot on that side which the company really owned; that is, the one which it held under the unrecorded deed. This contention, however, cannot be sound, if based on the intention of the parties, as shown by the surrounding facts, because Crumley had no knowledge of that deed, and Brown had forgotten that he had ever made it. It could not be sound as based on real ownership, because the deed being unrecorded, and Crumley having no notice of it, that deed was nonexistent as to him, and hence it must be conclusively presumed that the parties referred to

Campbell v. Ice & Coal Co.

the recorded deed of the Ice Company when they referred to the northwest corner of its lot as the beginning corner of the land to be conveyed by the quitclaim deed. As decided at the present term in the case of Miller v. King, in an opinion delivered by Mr. Justice Lansden, the fact that a vendee takes a quitclaim deed is not evidence, within the purview and operation of our recording laws, that he had knowledge of any defect or infirmity in the title. Under these laws it creates no presumption against him, and does not cast upon him the burden of explaining. Of course, this doctrine has no bearing upon equities which do not fall within the scope of the recording laws, and are unaffected thereby. *Lowry* v. *Brown,* 1 *Cold.,* 456.

It is insisted by the Ice Company that it was in open possession of the property, and that this was notice to Crumley, when he bought. This contention is based on the fact that a bridge which the Ice Company had made across a part of its 300-foot lot also passed over the adjoining 100-foot lot; also on the claim that it had lumber deposited on this 100-foot lot. As to the bridge: It appears from the map filed with the record that one side of the bridge passed over the extreme southeastern tip, a mere fractional part of the lot mentioned, covering only a very few feet. Clearly this was not put there for the purpose of indicating possession, and was of a character not to indicate the fact of possession to any one except upon survey made; evidently accidental. This would not be such a possession as would put an intending purchaser upon inquiry; nor would it be such

possession as would make a deed void under the champerty laws. As to the lumber: The evidence upon this subject is too general and indefinite to enable us to judge whether it was put on the lot before the purchase made by Crumley or afterwards, or whether it was upon the lot at the time Crumley purchased. It appears from the testimony of Mr. Exum, the president of the Ice Company, that when the buildings of the Ice Company were erected, the refuse lumber was piled on the lot in question; but it does not appear how long this lumber remained there, or whether it was there when Crumley purchased. In his cross-examination Mr. Exum says that he cannot say that this lot was used by the Ice Company, otherwise than in so far as the bridge crossed it.

It follows that the decree of the chancellor was correct on the grounds above stated, and must be affirmed.

The same result is reached under the operation of the principle that although the purchaser of land holding under a recorded deed finds in his line of title a quitclaim deed, or even though his immediate vendor held by quitclaim deed, yet he will be regarded as a purchaser in good faith, notwithstanding such quitclaim deed, if his title, as shown by the registry record, is apparently valid and clear, and he has no notice of any defect in the title. *Rich* v. *Downs,* 81 Kan., 43, 105 Pac., 9, 25 L. R. A. (N. S.), 1035, and notes. See, also, 39 Cyc., 696, and authorities cited in note 79. Such was Campbell's situation.