[No. 10438. Department One. January 21, 1913.]

PATRICK GOLDEN *et al.*, *Respondents*, v. PILCHUCK TRIBE NO. 42, IMPROVED ORDER OF RED MEN, *Appellant.*[1]

DEEDS—DESCRIPTION—CONSTRUCTION—WHOLE INTEREST OR MOIETY. Where a grantor conveyed "his one-half undivided interest" in four lots "and" two other lots, in which last two he held the whole title, without specifying whether he intended to convey the whole or only a half interest in the last two lots, the deed must be construed to convey only a half interest therein, as against a subsequent *bona fide* purchaser.

VENDOR AND PURCHASER—BONA FIDE PURCHASER—CONSTRUCTIVE NOTICE—PAYMENT OF TAXES BY JOINT OWNER. Payment of taxes by a grantee in a deed which was ambiguous as to whether it conveyed a half or the whole interest, is not a circumstance pointing to a construction of the deed of which a subsequent *bona fide* purchaser need take notice; especially in view of the fact that payment of taxes by a joint owner is no evidence of claim of title.

DEEDS—AMBIGUITY—CONSTRUCTION AGAINST GRANTOR. A strict construction of a deed against a grantor will not be indulged where the description was not so ambiguous as to call for extrinsic aid, and other rules did not fail, and where no possession was taken under the deed.

EXECUTORS AND ADMINISTRATORS—SALES—CAVEAT EMPTOR. The rule of *caveat emptor* applied to administrator's sales where no

[1]Reported in 129 Pac. 93.

rights of persons under disability are involved, applies only to want of power to sell, and does not prevent reliance on the title of the deceased at the time of his death, as disclosed by the records.

GOSE, J., dissents.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered October 20, 1911, upon findings in favor of the plaintiffs, in an action to quiet title. Reversed.

*Coleman, Fogarty & Anderson*, for appellant.
*Cooley & Horan* and *R. Mulvihill*, for respondents.

PARKER, J.—The plaintiffs seek a decree quieting title as against the claim of the defendant to lots 19 and 20, in block 625, in the city of Everett. Findings and judgment being rendered in favor of the plaintiffs, the defendant has appealed.

The controlling facts are not in dispute, and may be summarized as follows: Both the respondents and appellant claim title through Charles D. Sweeney, who in the year 1893 was the owner of the lots here involved, and also of lots 1, 2, 3 and 4, in block 623, in the city of Everett. In June of that year he conveyed to respondents an undivided half interest in lots 1, 2, 3 and 4, of block 623. Thereafter in January, 1896, he conveyed to respondents an interest in all of these lots by the following description:

"Does by these presents grant, bargain, sell, convey and confirm unto the said parties of the second part, and to their heirs and assigns, the following described tract, lots, or parcels of land, situate, lying and being in the county of Snohomish, state of Washington, and particularly bounded and described as follows, to wit: His one-half undivided interest in lots one (1), two (2), three (3) and four (4) in block six hundred twenty-three of Everett (623) and lots nineteen (19), twenty (20), block six hundred twenty-five (625) of Everett as shown upon the plat thereof filed for record in the county auditor's office in and for said county."

Thereafter Charles D. Sweeney died; and thereafter in February, 1901, his administrator, in pursuance of an order of the superior court made in the administration of his estate, conveyed to Philip Young "all the right, title, interest and estate of the said Charles D. Sweeney, deceased, at the time of his death, . . . in and to . . . an undivided half interest in lots nineteen (19) and twenty (20) in block six hundred and twenty-five (625), as shown upon the plat of Everett . . ."

Thereafter in June, 1905, through mesne conveyances, appellant acquired whatever title and interest in the lots passed to Philip Young by the conveyance from the administrator, and appellant has at all times since then claimed to be the owner of an undivided half interest in lots 19 and 20. It is to quiet title in respondents, as against this claim of appellant, that this action is prosecuted. The lots are vacant and unoccupied. No claim is made against the regularity of the proceedings leading up to, nor against the validity of, the administrator's deed to Philip Young, further than that Charles D. Sweeney had, prior to his death, parted with all of his title and interest to lots 19 and 20, and that therefore the administrator's deed conveyed no title or interest therein to Philip Young. No question is made against Philip Young and his grantees, including appellant, being purchasers for value and in good faith, except only in so far as they may be bound by the rule of *caveat emptor* as applied to purchasers at administrators' sales.

The principal question here presented is, Did Charles D. Sweeney, by his deed of January, 1896, to respondents, convey his entire title and interest in lots 19 and 20, or did he by that deed convey only an undivided one-half interest therein? This problem is to be solved by the language of the description of the interest conveyed by that deed, which, however, if ambiguous may be aided by the then situation of the parties thereto, the attending circumstances, and evidence of any construction which the parties themselves put

upon the language of the description; such extrinsic matters, however, to be considered in aid of such ambiguous description only in so far as appellant was bound to take notice of such extrinsic matters at the time of acquiring this deed in 1905. It is insisted by counsel for appellant that the words "his one-half undivided interest," as used in the description in the deed from Sweeney to respondent which we have above quoted, had reference to all of the lots there specified, and hence that only an undivided one-half of lots 19 and 20 passed to respondents by that conveyance; while counsel for respondents insist that such words had reference only to the lots 1, 2, 3 and 4; and that therefore the whole of the lots 19 and 20 passed to them by that conveyance.

Counsel for appellant invoke the general rule as stated in 13 Cyc. 638, as follows:

"Where a deed conveys a moiety or undivided part of a piece of land and then proceeds with a description of other land without express words showing an intention to convey all the latter described land, the words of limitation used in describing the first-mentioned parcel will be construed as also applying to the latter."

While this seems to be a fair statement of the law in general terms upon this subject, the decided cases have dealt with facts so varying as to suggest caution in applying the rule without careful consideration of the particular language of the description involved. Among the decisions coming to our notice which lend support to appellant's contentions, the following are most worthy of notice: In the early case of *Hapgood v. Whitman*, 13 Mass. 464, decided in 1816, there was involved a description in a conveyance much like that here involved. Both the facts involved and the conclusion reached in that case will be best understood by quoting therefrom as follows:

"The action was submitted to the decision of the court on a case agreed by the parties, in which the whole question was, whether by a certain deed, a copy of which was in the case,

the tenant took the whole, or a moiety only, of the land in question. By that deed, the tenant's father, in consideration of the love and affection he bore to his said son, and his desire to see him comfortably settled in the world, granted to him in fee 'the one-half of the land hereafter described, both in quantity and quality, one-half of all the land contained within the bounds hereafter mentioned, namely, beginning,' etc. (particularly reciting the boundary lines), 'the one-half of the whole of said land, and one-half of the buildings on the same, except the dwelling house; *and also* one other piece of land, being meadow and upland, containing seven acres, more or less, and bounded as follows, namely, beginning,' &c; the last-described piece being the land in question. . . .

"The words, *one-half of the land hereafter described, and one-half of all the land contained within the bounds hereafter mentioned,* necessarily apply to the land which is the subject of this suit; although these words are not repeated in that part of the deed which conveyed this particular lot. The terms *and also,* which introduce the description of the land in question, show that the same portion of the land was intended to be granted as of that described in the preceding part."

The words "and also" as there used, connecting the descriptions of the tracts involved, are substantially of the same import as the word "and" used in the description here involved, connecting the designation of lots 19 and 20 with the prior designation of lots 1, 2, 3 and 4. Indeed, in this case the descriptions seem to be even more closely related, because here all of the lots are designated in a single clause without any punctuation whatever, while in the *Hapgood* case the words "and also" were preceded by a semicolon. In the case of *Duncan v. Sylvester,* 24 Me. 482, 41 Am. Dec. 400, dealing with a situation not unlike this, the court said:

"The description of the estate conveyed by the deed from Abner to George Knight, is 'one undivided moiety or half part of a certain lot or tract of land situate in Northport aforesaid, and butted and bounded as follows, viz.:' it then proceeds with a particular recital of the metes and bounds of the lot, and concludes with these words, 'containing fifty-

two acres and eighty rods and no more, and including the
salmon fishery contiguous to said land.' Was the fishery in-
cluded in the lot, half of which was conveyed, or included in
the conveyance as a distinct portion of property? There is
no indication of an intention to convey two distinct pieces
of property, the one being an undivided half of the lot, and
the other the entire salmon fishery. The grammatical ar-
rangement of the language is opposed to such a construc-
tion, and is suited to convey an undivided half of the fishery
as a right appertaining to the lot. The word *containing* is
clearly connected with the word *lot*, or *tract*, as its substan-
tive, showing, that the whole lot contained a certain number
of acres and rods. The word *including* is coupled to it, and
must have the same antecedent, showing, that the lot included
the fishery. No other construction can be admitted without
doing great violence to the language."

In *Hubbard v. Greeley*, 84 Me. 340, 24 Atl. 799, 17 L.
R. A. 511, there was involved a description of an "undivided
half" of a parcel of land "and also" another parcel. The
court held that the interest conveyed in the second parcel
was limited by the words "undivided half," as well as the
interest conveyed in the first parcel.

The following decisions are cited and relied upon by coun-
sel for appellant. In *Child v. Wells*, 13 Pick. 121, the court
recognized the principle upon which the above noticed cases
were decided, though the particular facts there involved
called for a different decision. The question was disposed of
in the following language:

"The deed purports to convey an undivided moiety of a
tract (described), also one other tract of land (described),
also an undivided moiety of a third and fourth tracts (de-
scribed). The controversy is in regard to the second parcel
only. The argument presents two questions: 1. Whether
by a fair construction of the deed, the whole or a moiety of
the second parcel was conveyed. . . . Where a deed con-
tains a description of a moiety of one tract of land, and then
goes on to describe another parcel, beginning with the word
'also,' this affords some ground to infer that the force and
effect of this word was intended to extend to the word moiety,

as a qualification of the other descriptive words, and if there were nothing to control it, and such construction should appear consistent with the general intent of the deed, it might be reasonable to adopt it. This construction would be a little helped, if it should be, 'also one *other* tract,' the word 'other' indicating some connection between the first and second parcels. But in the deed under consideration, there are two other parcels, the descriptions of which, in both cases, begin like the first, with the words 'one half of undivided tract' etc. Taking the whole together then, it conveys to the grantee and his assigns, 1. One half of an undivided tract of land lying, etc. 2. Also a tract of land lying, etc. 3. Also one half of undivided tract of woodland, etc. 4. Also one half undivided tract or parcel of land lying, etc.

"The writer of the deed was obviously illiterate and unskilful; but making every allowance for this, it is impossible, we think, to put any construction upon the language, which will limit the conveyance of the second parcel to a moiety. We are of opinion that the whole of the second parcel passed by this deed."

While this decision is cited and relied upon by counsel for respondents, we think it lends greater support to appellant's contentions in view of the language here involved. In *Hodges v. Thayer*, 110 Mass. 286, there was involved a description reading "all those tracts or parcels of land situate, lying and being . . . to wit: one equal and undivided one-half part of . . . ;" Then follow descriptions of several other tracts by clauses separated from each other by semicolons. Construing these descriptions, the court said:

" 'All those tracts or parcels of land situate,' &c., 'described as follows.' The first particular description is of 'one equal and undivided one half part' of certain tracts, defined by number of township, range, section and lot, or fraction of section, indicated by points of compass. Then, after a semicolon, the description proceeds, 'also, lots three and four,' &c. The fact that the statement of the undivided half interest is contained only in one of the clauses of particular description, and that the whole is preceded with the general phrase, 'All those tracts or parcels,' indicates that the statement of partial interest was not also appli-

cable to all the tracts contained in the deed; or, to state it differently, the absence of the qualifying words, in the general terms of the description, indicates that they were not applicable generally to all the tracts."

This decision we think comes nearer lending support to the contention of counsel for respondents than any other coming to our notice. It is to be noticed, however, that each description involved was by a clause separated from the others by a semicolon. In *Michon v. Ayalla,* 84 Tex. 685, 19 S. W. 878, there was involved a description which seemed to convey an undivided interest only, but was followed by the words: "To have and to hold my entire interest in and to the foregoing described property." This was held to convey the grantor's entire interest in the property though apparently she then had a greater interest than the undivided interest which was so designated. In *Murphy v. Murphy,* 132 N. C. 360, 43 S. E. 922, and *McLennen v. McDonnell,* 78 Cal. 273, 20 Pac. 566, we find situations much like this where the same conclusions were reached. The decision in *Witt v. Harlan,* 66 Tex. 660, 2 S. W. 41, is of some interest in connection with this question, though we regard it as of but little aid here.

Some contention is made by counsel for respondents, rested upon the fact that the description in the conveyance made by Charles D. Sweeney to respondents in 1896 commenced with the word *"his,"* and the fact that at that time he had an undivided half interest in lots 1, 2, 3 and 4, and had the entire title to lots 19 and 20. There might be some basis for this fact having some influence in our decision here, if appellant at the time of acquiring this deed, had been required to take notice of the fact that Charles D. Sweeney had only an undivided half interest in lots 1, 2, 3 and 4; but we think appellant was not required to take notice of any such fact. Sweeney's one-half interest in those lots would not have been disclosed by an examination of his title to lots 19 and 20. That deed would not have appeared upon an ab-

stract of title to lot 19 or 20.   It seems to us that the words
"his half undivided interest," as used in the deed, would not
suggest to a prospective purchaser of the other undivided
half that that expression had reference only to lots 1, 2, 3
and 4 in that deed.

It appears that from the years 1896 to 1904, inclusive,
the taxes upon lots 19 and 20 were paid by respondents.
It may be suggested, though it is not plain from the briefs
that it is so contended, that this is a circumstance pointing
to a construction of the deed by the parties indicating a
conveyance of the whole of lots 19 and 20 to respondents by
Charles D. Sweeney.   We think that in any event this was
not a circumstance which appellant was bound to take notice
of; and even if it were, the payment of taxes upon an entire
tract of land by one of two joint owners is no evidence to
a stranger that the one so paying the taxes claims title to
the whole, nor that his co-owner is acquiescing in such claim.
Such payment of taxes simply inures to the benefit of both.
38 Cyc. 50.   It does appear that, from the time of acquiring
its deed in 1905, until the commencement of this action in
1909, appellant paid all of the taxes upon its claimed un-
divided half interest, and also paid several hundred dollars
additional upon local improvement assessments made by the
city of Everett.

Counsel for respondents insist upon the rule of strict con-
struction against the grantor.   If we were of the opinion
that this description was so ambiguous as to call for extrin-
sic aid in determining its meaning, and all other rules of
construction had failed in furnishing us aid as to its true
meaning, it is possible we might resort to the rule of strict
construction as against the grantor.   That rule has practi-
cal application where possession is taken under the deed, and
also as applied to covenants, conditions, and limitations in
a deed; but we apprehend it should be applied with caution
when it comes to construing the language of the description

of the property embodied in the deed. In the text of 13 Cyc. 609, it is said:

"In case of ambiguity in a deed, or where it admits of two constructions, it will be construed most strongly against the grantor, or most favorably to the grantee. This rule is subservient to the ascertained intention of the parties, and is to be modified by the rule requiring effect to be given every word so far as possible; nor is it to be applied or invoked until all other rules of construction fail. It is also declared to be of doubtful propriety, its value seriously affected, and it has even been said that it has no application at the present time."

Counsel for respondents invoke the rule of *caveat emptor* as applied to sales by administrators, citing *Towner v. Rodegeb*, 33 Wash. 153, 74 Pac. 50, 99 Am. St. 936, and *Matson v. Johnson*, 48 Wash. 256, 93 Pac. 324, 125 Am. St. 924. In the *Towner* case, the doctrine was applied only to the extent of requiring the purchaser to take notice of the want of power of an administrator to sell certain kind of property of the deceased for the benefit of creditors, and in the *Matson* case the court said, at page 259: "The rule of *caveat emptor* applies in all its vigor to sales by administrators or executors in this state, and the purchaser acquires only the interest of the estate;" thus recognizing that the doctrine does not go to the extent of requiring such a purchaser to look beyond the actual interest or title of the deceased at the time of his death, and the power to sell the particular property involved in the administration. We know of no law that does not permit the purchaser at an administrator's sale to rely upon the title of the deceased at the time of his death as shown by the records of the county where the land lies, when such land is unoccupied as in this case, and no rights of minors or incompetent persons are involved, to the same extent any purchaser may so rely. In the text of 39 Cyc. 1741, it is said:

"It is the policy of the law that all matters affecting the title to land shall be placed on record, and, where an intend-

ing purchaser finds nothing on record to indicate an adverse claim, and has no notice of any facts sufficient to put him on inquiry as to matters not of record, he has the right to presume that there is no adverse claim."

Our decisions are in harmony with this view. *White v. McSorley*, 47 Wash. 18, 91 Pac. 243; *McDougall v. Murray*, 57 Wash. 76, 106 Pac. 490, 26 L. R. A. (N. S.) 159; *Eyanson v. Waidlich*, 57 Wash. 234, 106 Pac. 746.

We are of the opinion that, when appellant acquired its deed to the undivided half interest in lots 19 and 20, in June, 1905, it was entitled to rely solely upon the language of the description of the deed from Charles D. Sweeney to respondents, of January, 1896; and in view of the fact that all of the designated lots of that description following the words "his one half undivided interest" are in one clause, without any punctuation whatever, we conclude that by that conveyance Charles D. Sweeney did not part with more than an undivided half interest in lots 19 and 20, and that he died possessed of the title to the other undivided half interest therein; hence, that undivided half interest passed by the deed of his administrator and by mesne conveyance to appellant.

We conclude that respondents were not entitled to have title quieted in them as against the claim of appellant to an undivided half interest in lots 19 and 20.

The judgment is reversed, with directions to the trial court to dismiss the action.

Crow, C. J., Mount, and Chadwick, JJ., concur.

Gose, J. (dissenting)—I think the two deeds, when read together, fortified by the conduct of the parties during the lifetime of the grantor, show a clear intention to convey the entire fee of the property in controversy. I therefore dissent.