[No. 2630.  Decided September 2, 1898.]

TERESA ELDRIDGE, *Appellant*, v. JOHN H. STENGER *et ux.*, *Respondents*.

APPEAL — SERVICE OF NOTICE — LIS PENDENS — EXECUTION BY ATTORNEY — WHEN UNEFFECTIVE AS NOTICE.

The rule requiring service of notice of appeal on all parties who do not join in the appeal does not apply in cases where one named as a party has never in any way appeared in the action.

A *lis pendens* notice may properly be signed by the attorney of the party desiring to file it as well as by the party himself.

Under Laws 1893, p. 413, providing that every person whose conveyance or incumbrance is executed or recorded subsequently to the filing of *lis pendens* notice shall be deemed a subsequent

purchaser· or incumbrancer, and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he were a party to the action, one who has taken a mortgage with knowledge of an outstanding unrecorded deed of the premises cannot bind the holder of the unrecorded deed by filing notice of *lis pendens* upon the institution of a suit to foreclose his mortgage.

Appeal from Superior Court, Whatcom County.—Hon. JOHN R. WINN, Judge. Reversed.

*Dorr & Hadley*, for appellant.

*Maxwell & Romaine*, and *Fairchild & Bruce*, for respondents.

The opinion of the court was delivered by

ANDERS, J.—The respondents move to dismiss this appeal upon the grounds that the appeal was not taken in accordance with the statute, and that this court has therefore no jurisdiction of the subject matter. The particular objection is that the defendant J. J. Bell was not served with notice of the appeal; but it appears from the record that he never in any way appeared in the action, and therefore no service of the notice upon him was required. The motion must be denied.

This action was brought by the appellant, Teresa Eldridge, to enjoin the respondent John H. Stenger from further proceeding in an action in the superior court of Whatcom county to foreclose a mortgage executed by Hugh Eldridge and Edmund Cosgrove and wife to the respondent Stenger in June, 1892, upon certain real estate in Whatcom county, described as all that part of the east half of the Edward Eldridge donation claim lying west of Squalicum creek, to which action appellant was not made a party, and to restrain said respondents from asserting any interest in or to said premises. Other parties were joined as defendants in this action, but they all defaulted, the Stengers be-

ing the only real parties in interest. The land in controversy is a part of the Edward Eldridge donation claim settled upon by him and his wife in the year 1853. Edward Eldridge, who was the husband of appellant, died on October 12, 1892. In the year 1891 the said Edward Eldridge concluded to convey the land in question, together with other real estate, to the appellant, and, in order to effectuate his determination, he, together with his wife, Teresa Eldridge, on April 28, 1891, conveyed the land to their son, Hugh Eldridge, for the purpose of having him convey the same to his mother. This deed was recorded on or about the 29th day of April, 1891. At that time the grantee named therein was absent from home, and had no knowledge of the transaction. After Hugh returned, his father delivered to him this deed, with instructions to convey the property described therein to his mother, the present appellant. On August 7, 1891, Hugh prepared a deed in pursuance of said instructions, and on the 30th day of November following executed and delivered the same to his mother. There was no consideration for either of these deeds, though a money consideration is stated in each of them. This deed to Mrs. Eldridge was not recorded until October 1, 1895. Sometime in June, 1892, Hugh Eldridge and Edmund Cosgrove, being the owners of the controlling interest in the Fairhaven & New Whatcom Street Car Company, entered into an agreement with respondent John H. Stenger to purchase the majority of the capital stock of another street railway company in New Whatcom, owned by said Stenger. The price agreed to be paid for this stock was $45,000, $10,000 to be paid in cash, $10,000 in six months, and the balance, $25,000, in one year, the deferred payments to be evidenced by promissory notes secured by mortgages upon real estate. At the time the purchase and sale of this stock was consummated the stock was in the pos-

session of the Puget Sound Loan, Trust & Banking Company, and was, it appears, held as collateral security for the payment of Stenger's indebtedness to that and the Bellingham Bay National Bank. And it seems to have been understood between Mr. Stenger and the banks that the securities received from Eldridge and Cosgrove should be held in lieu of the railway stock. Between the seventh and thirteenth days of June, 1892, there was a meeting of all parties interested in the stock transfer in the private office of the Puget Sound Bank, a small room adjoining, and opening out of, the main banking room, for the purpose of determining what property was to be included in the mortgages to be given by Eldridge and Cosgrove. There were present at that meeting the respondent John H. Stenger, F. C. Pettibone, president of the Puget Sound Bank, C. D. Francis, cashier of the Bellingham Bay National Bank of New Whatcom, Hugh Eldridge, Edmund Cosgrove and E. B. Leaming, the attorney of the two last named persons. Several city lots were proposed by Cosgrove and included in the mortgage, and various pieces of real estate were submitted by Eldridge, some of which were rejected for the reason that it appeared that he owned but an undivided interest therein. Finally Eldridge proposed to include in the mortgage that part of the Edward Eldridge donation claim above mentioned, and this was accepted by Stenger and the representatives of the bank, and the mortgage was accordingly prepared embracing that property. This mortgage was executed and delivered on June 13, 1892, but was withheld from record at the instance of Eldridge and one James W. Morgan until March 11, 1893. The $10,000 mortgage was fully paid, but the mortgagors were able to pay but $5,000 on the $25,000 mortgage, and on November 13, 1894, the mortgagee, John H. Stenger, commenced an action to foreclose the same. On February 27 judgment was rendered against Eldridge and Cosgrove for the amount due upon

their note, and a decree of foreclosure entered directing the mortgaged property to be sold in satisfaction of such judgment. On February 26, 1896, the complaint in this action was filed, and the summons was served upon the respondent Stenger the same day. After the decree in the foreclosure suit was entered, execution issued thereon and placed in the hands of the sheriff, and the property advertised for sale, the appellant, by leave of the court, filed a supplemental complaint setting up those facts, making J. J. Bell, sheriff of Whatcom county, a party, and asking that he be enjoined from proceeding with the sale. After issues joined, the cause was tried by the court and judgment and decree rendered against the appellant, dismissing her complaint and enjoining her from asserting any claim or interest in or to the land in controversy. To reverse this judgment and decree this appeal is prosecuted.

Several errors are assigned and relied on by the appellant, but, in our view of the case, it is only necessary to consider two questions. The first is whether the respondent Stenger had notice of the appellant's title to, or interest in, the mortgaged premises at the time he received his mortgage, and the second is as to the effect of the filing of the notice of *lis pendens* in the foreclosure action. The court found as a fact that the defendant John H. Stenger had no notice of the existence of the deed to the plaintiff prior to its filing and recording in the auditor's office, and, prior to that date, had no knowledge that the plaintiff, Teresa Eldridge, had or claimed any right or interest in or to the premises in controversy. The appellant duly excepted to this finding, and it therefore becomes the absolute duty of this court, under the statute, to examine the evidence upon that proposition *de novo*, and to determine the fact in accordance wtih the record. It is strenuously contended by counsel for the appellant that this finding of the court is

clearly contrary to the evidence and constitutes palpable error on the part of the trial court.   All of the parties who were present at the meeting at the bank testified upon this point at the trial in the court below.   Four of them, viz., Eldridge, Cosgrove, Francis and Leaming, testified positively to the effect that Hugh Eldridge at that time and in the hearing of all parties, stated to Stenger that, while the property stood in his name upon the records, it had been deeded by him to his mother, but the deed had not been recorded and he could keep it off the records until such time as the indebtedness to Stenger should be settled;  it being understood at that time by all parties that the indebtedness would be paid before the notes and mortgages became due. Mr. Pettibone, a witness for the respondents, and one of the parties who was present at this meeting, testified that he did not hear this statement, or anything in regard to Mrs. Eldridge's ownership of the property;   but he also stated that he did not remember the conversation that took place at that time, and that he passed back and forth from the room to the bank during the time of the meeting, and that the conversation might have occurred and he not have heard it.   But Mr. Stenger positively denies that any such statement was made to him, or that he had any notice whatever either of Mrs. Eldridge's deed or any claim whatever upon her part to the mortgaged premises.   The learned counsel for the respondents admit that these four witnesses testified positively as to the ownership of this property being in Mrs. Eldridge, but insist that the testimony is not worthy of belief and especially claim that the testimony of Eldridge should be entirely disregarded, because he had admitted that he claimed this property as his own when being interrogated in open court as to his qualification to become bail for a certain person, and that he stated on his examination in this case that he did not claim in the

foreclosure suit that he and Cosgrove were not indebted to Mr. Stenger upon their promissory note, which latter statement is contrary to the answer filed and verified by him in that proceeding. Counsel also claim that the testimony of Mr. Leaming, the attorney of Eldridge in the foreclosure proceeding, should also be discredited because of the fact that he drafted the defendants' answer and filed various dilatory motions, etc., in the cause. But it seems to us that the acts done by this witness in that case, however they might be considered from a purely ethical point of view, are not sufficient to impeach his credibility as a witness. Mr. Leaming certainly has no interest in this case, at least none that the court can discover, and the same may be said of Cosgrove and Francis; and, if the testimony of these four witnesses were all the testimony in the record, we would feel constrained, under the circumstances, to hold that the respondent had notice of appellant's title when he took the mortgage from Eldridge and Cosgrove. But it appears from the testimony of James W. Morgan, who was president of the Bellingham Bay National Bank, that at about the time the mortgage was executed Mr. Stenger came into the bank, and that he, Morgan, expressed surprise that Hugh Eldridge should mortgage his mother's property, even although it was understood that the mortgages would be but temporary, and that Mr. Stenger remarked that his claim would doubtless be taken care of shortly anyway. In addition to this, one Keith, who testified by deposition in California, stated that Mr. Stenger admitted to him some time in 1894 that he knew Mrs. Eldridge owned the mortgaged property, but that he was secured anyway, because he had a contract from James W. Morgan to hold him harmless against any subsequent mortgages or conveyances of the property; and the fact was that Mr. Stenger had such an agreement from Mr. Morgan.

It is also claimed by the counsel for respondents that the testimony of Francis and Morgan was impeached at the trial. It appears clear to us, however, that the effort at impeachment was entirely unsuccessful. From the whole record, therefore, we are constrained to hold that respondent Stenger accepted his mortgage with notice of appellant's deed.

This brings us to the remaining question, which is, what was the effect of the notice of *lis pendens* which was filed in the foreclosure suit on November 13, 1894? The notice which was filed contained a statement of all the facts required by the statute. The counsel for appellant objects to the consideration of the notice for the reason that it was signed by the plaintiff's attorneys and not by the plaintiff. While the statute provides that the plaintiff in a proper action may file such notice, we think the common practice is, and has been, for the notice to be signed and filed in fact by the attorney of the party desiring to file it. See Estee's Pleadings, title *Lis Pendens*. Our statute (Laws 1893, p. 413) provides that

"From the time of the filing only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby, and every person whose conveyance or encumbrance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he were a party to the action."

It will be borne in mind that the notice in this instance was filed prior to the recording of appellant's deed, and it is insisted by counsel for the respondents that this statute precludes the appellant from claiming any interest in the premises in dispute. It is asserted that under the statute the plaintiff cannot occupy any attitude other than that of a subsequent purchaser, and that is manifestly true;

but the provision that such subsequent purchaser shall be bound by the proceedings to the same extent as if he were a party to the action must also be considered in construing the statute. Now, conceding that Mrs. Eldridge was a subsequent purchaser, in contemplation of this statute, and bound to the same extent as if she had been a party to the action to foreclose the mortgage, what would have been the effect upon her rights had she been made a party to that action? If she had been a party and it had transpired that this mortgagee had notice of her prior unrecorded deed at the time the mortgage was executed and delivered, could it be claimed that her rights would have been destroyed and her deed held for naught? We think not. This statute seems to have been copied from the statute of New York, and we have seen none like it elsewhere, and the courts of that state have held that the title of a purchaser holding under a prior unrecorded conveyance, if made a party, could not, under such circumstances, be affected when the plaintiff at the time of filing the notice of *lis pendens* had actual or constructive notice of his rights. This question was elaborately discussed and determined in accordance with our views of the statute in the case of *Lamont v. Cheshire*, 65 N. Y. 30.

For the foregoing reasons the judgment is reversed and the cause remanded, with directions to enter a decree in favor of the plaintiff enjoining the respondents from selling or offering for sale the premises described in the complaint, or from asserting any right or title in or to said premises by virtue of the mortgage aforesaid.

DUNBAR, GORDON and REAVIS, JJ., concur.