[No. 12371.   Department One.   April 22, 1915.]

## L. A. MERRICK, *as Trustee, Appellant,* v. R. E. PATTISON *et al., Respondents.*[1]

FRAUDULENT CONVEYANCES—ACTIONS—EVIDENCE—SUFFICIENCY. In an action by a trustee in bankruptcy for an insolvent corporation seeking to be decreed the owner of certain realty, on the assumption it had been held in trust for the bankrupt by one of its officers and subsequently conveyed away by the latter, a finding that the defendants had acquired the property in good faith is sustained by evidence that the property was worth $2,000 or less; that the defendants gave in consideration therefor $2,170 by cancelling a past due note, which with interest amounted to $1,050, and assuming a mortgage and taxes on the property aggregating an additional $1,120, that there was nothing of record suggesting that the bankrupt had an interest in the property, that the defendants had no actual notice of any such interest, nor any knowledge that would have put them on inquiry.

LIS PENDENS—FILING OF NOTICE—EFFECT—SUBSEQUENT RECORD OF INSTRUMENTS. Under Rem. & Bal. Code, § 243, which provides that a *lis pendens* notice shall, from the time of the filing only, "be constructive notice to a purchaser or encumbrancer of the property affected thereby, and every person whose conveyance or encumbrance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he were a party to the action," delay in recording a conveyance until after the filing of a *lis pendens* notice would not affect the substantive rights of the parties in the property in controversy; since the statute is merely a law of procedure, and goes no further than to make the decree, if ultimately rendered in favor of the plaintiff, effective against one whose conveyance is recorded after the filing of the *lis pendens,* "to the same extent as if he were a party to the action."

[1]Reported in 147 Pac. 1137.

FRAUDULENT CONVEYANCES — BONA FIDE PURCHASER — CONSIDERA-
TION. One is a purchaser of real estate in good faith and for value,
although part of the consideration may have been for a preexisting
debt, where the balance of the consideration was the assumption of
a mortgage debt and taxes on the property, which was a new con-
sideration.

Appeal from a judgment of the superior court for Sno-
homish county, Bell, J., entered April 25, 1914, upon find-
ings in favor of the defendants, in an action for equitable
relief, tried to the court. Affirmed.

*C. H. Graves*, for appellant.

*Coleman & Fogarty*, for respondents.

PARKER, J.—This action was originally commenced in the
superior court for Snohomish county by the plaintiff, as
trustee in bankruptcy of the Donovan-Pattison Realty Com-
pany, against Fred O. Pattison and wife. The plaintiff
sought to be decreed the owner of lots 3, 4 and 5, block 772,
plat of Everett, division H, as against the defendants Fred O.
Pattison and wife. The lots having been conveyed by Fred O.
Pattison and wife to R. E. Pattison before the commence-
ment of this action, which conveyance was not recorded in
the office of the auditor of Snohomish county until thereafter,
R. E. Pattison and wife intervened as defendants, and the
controversy thereafter became one between them and the
plaintiff. The trial resulted in findings and decree denying
to the plaintiff the relief prayed for, and in effect decreeing
the title of R. E. Pattison and wife, the intervening defend-
ants, to be superior to the claims of the plaintiff. From this
disposition of the cause, the plaintiff has appealed to this
court.

The Donovan-Pattison Realty Company is a corporation
organized under the laws of this state, and, prior to the time
it was adjudged a bankrupt, it was engaged in the real
estate business, buying and selling real property for itself
and as agent for others. Fred O. Pattison, one of the

original defendants in this action, participated in the active management of the affairs of the corporation as one of its trustees. On June 18, 1912, the corporation conveyed certain of its property in exchange for other property. Among the property given in consideration of the conveyance of the property by the corporation was the property here involved, which property the corporation caused to be conveyed to Fred O. Pattison by one of the parties it dealt with in making the exchange. This deed of conveyance was duly recorded in the office of the auditor of Snohomish county soon thereafter. It is claimed that the corporation caused this conveyance to be made to Fred O. Pattison in lieu of the payment to him of certain moneys it held in trust for him, which were the proceeds of the sale of property it had held in trust for him. This is one of the disputed facts in the case, which, however, in view of our conclusions, is of no particular importance here. The corporation was insolvent at the time of making all of these conveyances in connection with this exchange of property, and it was formally adjudged a bankrupt on August 30, 1913, when appellant became its trustee in bankruptcy.

There is nothing in the record before us tending to show that the legal title to the property here involved was ever in the corporation, nor is there any record evidence that it made any claim of title, legal or equitable, to the property until the filing of the notice of the pendency of this action. We proceed upon the assumption that appellant's claim to the property as trustee in bankruptcy rests wholly upon the theory that Fred O. Pattison received the legal title thereto in trust for the corporation when it was conveyed to him in connection with the exchange of property between the corporation and those it then dealt with.

On October 1, 1913, Fred O. Pattison and Ella Pattison, his wife, conveyed the property here involved to respondent, R. E. Pattison. On October 9, 1913, this action was commenced, and on the same day notice of its pendency was duly

filed for record in the office of the auditor of Snohomish county in compliance with Rem. & Bal. Code, § 243 (P. C. 81 § 173). On October 14, 1913, the deed of conveyance from Fred O. Pattison and wife to R. E. Pattison was duly filed for record in the office of the auditor of Snohomish county. Thereafter, R. E. Pattison and wife voluntarily became parties defendant in this action by intervention, and thereafter the cause proceeded to trial and final determination in the superior court as a controversy between them and the appellant. The trial court found, touching the good faith of R. E. Pattison and wife in the purchase of the property and the consideration then given by them therefor, as follows:

"(12) . . . the consideration for said transfer was the payment and satisfaction of an existing debt payable by F. O. Pattison and Ella Pattison to R. E. Pattison, evidenced by a note for one thousand dollars dated July 2, 1912, with accrued interest amounting to over fifty dollars, and the assumption and agreement on the part of the said R. E. Pattison and Eclista Pattison, his wife, to pay two mortgages upon said property aggregating the sum of ten hundred fifty dollars, together with taxes and street assessments amounting to the sum of about seventy dollars. . . .

"(13) That at the time of said purchase set forth in finding XII, interveners had no knowledge and information that the above named plaintiff claimed any right, title, or interest whatever in or to said real estate or any part thereof, and that on said date of said purchase the said R. E. Pattison and Eclista Pattison, in good faith and for the consideration set forth in finding No. XII, purchased said premises, . . ."

These findings were duly excepted to by counsel for appellant. The court made no specific finding as to the value of the property at that time, but the evidence clearly warrants the conclusion that it was worth approximately $2,000. The evidence also clearly shows that the debt evidenced by the note mentioned in the above quoted finding as being satis-

fied by the conveyance to respondents and part of the consideration therefor was then past due.

It is contended by counsel for appellant that the evidence does not warrant the making of the findings above quoted touching the good faith of the respondent in purchasing the property from Fred O. Pattison and wife, and the consideration therefor. A painstaking review of the evidence convinces us that it preponderates in favor of these findings. Respondent R. E. Pattison is the father of Fred O. Pattison, one of the original defendants. This is about the only fact suggesting inquiry into the motives and good faith of the respondent in purchasing the property. It seems quite clear to us, however, as it evidently did to the trial court, that neither of the respondents had any connection whatever with the Donovan-Pattison Realty Company; that there was then nothing of record suggesting that the Donovan-Pattison Realty Company ever had the least interest, legal or equitable, in the property; that neither of the respondents had any actual notice of any such interest; that they had no knowledge that would have suggested inquiry as to any such possible interest; that the $2,170, which they in effect paid for the property by cancellation of the debt due them from Fred O. Pattison and wife and the assumption of the mort-- gages and taxes against the property was all the property was then worth. Indeed, the testimony of the apparently disinterested witnesses, as to the value of the property at that time, seems to indicate that it was worth even less than this amount.

It is contended in appellant's behalf that the commencement of this action and the filing of the notice of the pendency thereof in the office of the auditor of Snohomish county, before the recording therein of respondents' deed from Fred O. Pattison and wife, rendered appellant's claimed right to the property superior to that of respondents under their deed. This contention is rested upon the provisions of Rem.

& Bal. Code, § 243 (P. C. 81 §173), which, so far as necessary to be here noticed, reads as follows:

"In an action affecting the title to real property the plaintiff, at the time of filing the complaint . . . may file with the auditor of each county in which the property is situated a notice of the pendency of the action, containing the names of the parties, the object of the action, and a description of the real property in that county affected thereby. From the time of the filing only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby, and every person whose conveyance or encumbrance is subsequently executed *or subsequently recorded* shall be deemed a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he were a party to the action. . . ."

We have italicized the words particularly relied upon by counsel for appellant, who seems to proceed upon the theory that the *lis pendens* notice had the effect of making respondents purchasers of the property, in legal effect, subsequent to and with notice of the claimed rights of appellant, for all purposes. We are unable to so view the effect of a notice of *lis pendens under this statute*. This, we think, is only a law of procedure, enacted with a view of making a decree of the nature here sought, if ultimately rendered in favor of the plaintiff, effective, not only against the original defendant in the action, but also effective against one who purchases the property or whose conveyance evidencing such purchase is recorded after the filing of the notice of pendency of the action, "*to the same extent as if he were a party to the action.*" In other words, the statute, and a notice of *lis pendens* filed in pursuance thereof, has the effect of constructively making the one claiming under such subsequently executed or recorded conveyance a party to the action. It does not follow that a decree must necessarily be rendered in favor of the plaintiff because his notice of *lis pendens* is prior in time to the recording of a conveyance of a purchaser.

Such purchaser is not thereby prevented from asserting his claimed rights as against the claims of the plaintiff and having the same determined upon the merits. Such rights may or may not be superior to those claimed by the plaintiff. The notice of *lis pendens*, as we view it, has no practical effect on the substantive rights of the respective parties, but is only a method of forcing a purchaser, under a subsequently recorded conveyance, to set up his claim of right in that action or have the decree therein, which may be rendered in favor of the plaintiff, made effective against him as well as the original defendant. It seems to us that this problem has been solved in respondents' favor by the decision of this court in *Eldridge v. Stenger*, 19 Wash. 697, 54 Pac. 541, where Judge Anders, speaking for the court touching the effect of a notice of *lis pendens* under this statute, there being involved conflicting claimed rights to be determined as a question of priority, said:

"It will be borne in mind that the notice in this instance was filed prior to the recording of appellant's deed, and it is insisted by counsel for the respondents that this statute precludes the appellant from claiming any interest in the premises in dispute. It is asserted that under the statute the plaintiff cannot occupy any attitude other than that of a subsequent purchaser, and that is manifestly true; but the provision that such subsequent purchaser shall be bound by the proceedings to the same extent as if he were a party to the action must also be considered in construing the statute. Now, conceding that Mrs. Eldridge was a subsequent purchaser, in contemplation of this statute, and bound to the same extent as if she had been a party to the action to foreclose the mortgage, what would have been the effect upon her rights had she been made a party to that action? If she had been a party and it had transpired that this mortgagee had notice of her prior unrecorded deed at the time the mortgage was executed and delivered, could it be claimed that her rights would have been destroyed and her deed held for naught? We think not."

In *Lamont v. Cheshire*, 65 N. Y. 30, in considering the effect of a notice of *lis pendens* filed under a statute in sub-

stance like ours, after reviewing at some length the theory of
*lis pendens*, the court said:

"It has been seen, in the course of this discussion, that the
theory of a *lis pendens* is that there must be no innovation
in the proceedings so *as to prejudice* the rights of the plain-
tiff. It is simply a rule to give effect to the rights *ultimately*
established by the decree. Applying this doctrine to the
present case, it would be impossible to claim that a *lis pen-
dens* could give a creditor under an attachment a lien supe-
rior to the title of a purchaser under an unrecorded convey-
ance. The statute distinctly provides that a person whose
conveyance is executed or recorded subsequent to the filing
of a notice shall be deemed a subsequent purchaser, and
bound by the proceedings *to the same extent as if he were a
party to the action.* It is necessary to ascertain, therefore,
what would have been the effect if the defendants had been
made parties to the action. Had the plaintiff made the de-
fendants parties to the action, his attachment proceedings
would, of course, have been nugatory. As soon as the whole
case had been disclosed it would have appeared that he was
making a claim against a person who was in no respect liable
to him, and his complaint would have been dismissed. How
can he, under the statute, have any greater claims by omit-
ting him? The words 'to the same extent as if he were a
party to the action' cannot be omitted in construction.

"The scope of the clause is quite apparent. The case of
conveyances executed *after* the filing of the notice comes
within the ordinary rules of equity. What is now in the one
hundred and thirty-second section of the Code is the provi-
sion in respect to a conveyance executed *prior to* and *re-
corded subsequent to* the filing of the notice. . . . On
the other hand, if there should be a purchaser in good faith,
he would, in all probability, acquire a perfect title, and the
holder of the prior unrecorded mortgage would be remitted
to an equitable claim upon the purchase money as against
any person holding a position subordinate to his own. Each
case would thus be governed by its own peculiar circum-
stances. There is but a single underlying principle. This
is, that the holder of the unrecorded instrument is affected
to the same extent 'as if he were a party to the action,' and
had not appeared or made any defense."

The following also lend support to the view that our statute is one of procedure only, for the purpose of making effective whatever decree may be rendered in favor of the plaintiff in an action of this nature, regardless of conveyances made or recorded subsequent to the filing of the notice of *lis pendens*, and that it is not a law controlling the substantive rights of the parties which may be adjudicated upon the merits in the action. *Payson v. Jacobs*, 38 Wash. 203, 80 Pac. 429; *Wright v. Jessup*, 44 Wash. 618, 87 Pac. 930; *Baker v. Bartlett*, 18 Mont. 446, 45 Pac. 1084, 56 Am. St. 594.

Aside from the claimed effect of the *lis pendens* notice, counsel make some contention that respondents were not purchasers of the property for value, because of the fact that the consideration given by them therefor was the cancellation of a preexisting debt due to them from Fred O. Pattison and wife, and the assumption of mortgages and taxes upon the property. We are to remember that there was an absolute conveyance of the property, intended as such, in full satisfaction of the debt, as well as the assumption of the mortgages and taxes on the part of respondents. If the entire consideration had been a preexisting debt, we might then be under the necessity of reviewing the seeming conflicting authorities upon the question of whether or not respondents would be *bona fide* purchasers for value. 39 Cyc. 1699, and cases cited. See note in *Title Guaranty & Surety Co. v. Klein* (178 Fed. 689), 27 L. R. A. (N. S.) 620. Since practically one-half of the consideration was the assumption of mortgage debts against the property, which was a new consideration, respondents were in any event thereby rendered purchasers for value. Our attention has not been called to any authorities holding to the contrary. *Alder-Goldman Commission Co. v. Clemons*, 64 Ark. 197, 41 S. W. 417; *Drey v. Doyle*, 99 Mo. 459, 12 S. W. 287; *Warren v. Wilder*, 114 N. Y. 209, 21 N. E. 159; *Henderson v. Pilgrim*,

22 Tex. 464. We conclude that respondents were pur-
chasers in good faith and for full value.

Appellant's rights surely are in no event superior to those
of a judgment creditor. The holder of a prior unrecorded
mortgage has been held to have a lien upon the mortgaged
property superior to that of a judgment creditor, upon the
ground that the latter is not a purchaser for value as against
such prior mortgagee. *Dawson v. McCarty*, 21 Wash. 314,
57 Pac. 816, 75 Am. St. 841. Our decisions in *Dow v. Bal-
lard*, 28 Wash. 87, 68 Pac. 176, and *McDougall v. Murray*,
57 Wash. 76, 106 Pac. 490, 26 L. R. A. (N. S.) 159, are
in harmony with this holding, though not presenting the
exact question here involved.

We conclude that the learned trial court correctly deter-
mined the respective rights of the parties, and therefore
affirm the judgment.

MORRIS, C. J., HOLCOMB, and MOUNT, JJ., concur.